NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In re: : | Bankruptcy Case No. 10-21719 |
| PRISCO PROPERTIES, LLC : | Chapter 11 |
| Debtor. : |  |

**OPINION**

**TD BANKNORTH'S MOTION TO CONVERT**
**FROM CHAPTER 11 TO CHAPTER 7**
**Document #45**

**APPEARANCES**

Paul Rubin, Esquire
John M. August, Esquire
HERRICK FEINSTEIN LLP
One Gateway Center
Newark, New Jersey 07102
Attorneys for TD Banknorth, N.A.

Morris S. Bauer, Esquire
Melissa A. Peña, Esquire
Norris McLaughlin & Marcus, P.A.
721 Route 202-206
P.O. Box 5933
Bridgewater, New Jersey 08807-5933
Attorneys for Debtor

Procedural History

On April 19, 2010, Prisco Properties, LLC ("Prisco" or "Debtor") filed a voluntary Chapter 11 petition. Prisco filed its Disclosure Statement and Plan of Reorganization on July 18, 2010. TD Banknorth, N.A. ("TD Bank") filed a motion pursuant to 11 U.S.C. § 1112(b) to convert the case to Chapter 7. The Court took oral argument on TD Bank's motion to convert on September 20, 2010, and reserved decision.

Background

The Debtor's sole asset is real property located at 2211-2219 Allenwood Road, Wall Township, New Jersey ("Property"). The Property is comprised of two lots: Lot 12 is vacant; Lot 14 contains a 140,000 square foot building with warehouse and office space. The Debtor purchased the Property in January 2003. Anthony Prisco[1] is the managing member of the Debtor.

TD Bank, and its predecessor-in-interest Hudson United Bank, made four loans to the Debtor ("Loans") in the aggregate principal amount of $7,175,000.00. Each loan was evidenced by a note ("Notes") and secured by a mortgage ("Mortgages") encumbering the Property. The Mortgages prohibit subordinate liens or encumbrances on the Property without TD Bank's prior written consent. In connection with each loan, the Debtor executed and delivered an Absolute Assignment of Leases, Rentals and Profits ("Absolute Assignments"). Anthony Prisco personally guaranteed three of the four Loans. Each of the Absolute Assignments provides in relevant part:

---

[1] Mr. Prisco's percentage of ownership is unclear. The April 19, 2010, resolution authorizing the filing of the bankruptcy petition listed Anthony S. Prisco as the sole member of the LLC; however, his certification dated September 13, 2010 states that he holds a 98% equity interest and his wife, Dina Johannemann, holds the other 2%.

> For value received, Assignor hereby absolutely and unconditionally assigns and transfers to Assignee and Assignee's successors and assigns: (A) all of Assignor's right to existing and future rentals, issues and profits from the Property; (B) all of Assignor's existing and future right, title and interest in, to and under all Leases; © all Awards and Proceeds including all payments and consideration in lieu of rent; and (D) all Assignor's interest in, and liens, including landlord's and renter's liens and interests that may encumber or affect, any property of any existing or future tenant, lessee or occupant of, the Property, provided, however, that so long as there is no Event of Default, Assignor shall have the right and license to remain in possession of, and to collect all rentals arising from, the Property.

Debtor defaulted on its obligations on the loans, and in 2008 TD Bank obtained a judgment against the Debtor in the amount of $6,506,876.58. Additionally, TD Bank obtained a charging order against Mr. Prisco's membership interest in the Debtor, pursuant to which TD Bank is to receive all distributions, dividends, returns on investments or returns on equity from the Debtor until its claim is paid in full.

GI Apparel, Inc., a company owned and controlled solely by Mr. Prisco, was a tenant at the Property from 2004 until it ceased operations in 2008. Mr. Prisco personally guaranteed GI's obligations to its lender, The CIT Group. In addition, Mr. Prisco had the Debtor fully guaranty GI's obligations to The CIT Group. To support that guaranty the Debtor pledged approximately $156,000 of its cash and issued a mortgage in favor of CIT in an amount up to $4,000,000. None of the money borrowed from CIT was passed through to the Debtor. The Debtor sought approval from TD Bank for this transaction and it was denied. In May 2008 after GI defaulted on its obligations, CIT applied the $156,000 cash pledge and then obtained a personal judgment against Mr. Prisco for approximately $5,000,000.

After the demise of GI, Mr. Prisco's wife, Dina Johannemann, formed Matrix Sales Group, LLC ("Matrix") to operate another t-shirt business. Mr. Prisco is the CEO of Matrix and is

responsible for its day-to-day operations. Matrix does not pay the Debtor any rent for its use of the Property. The Debtor is also not receiving any rent for the office space provided to GI's prior in-house counsel, Jeffrey Miller.

The Debtor had two other tenants using warehouse space on the Property: 1) Wal-mart/Manahawkin was leasing 42,000 square-feet; and 2) The Beverage Works NY, Inc. is leasing 32,000 square feet. The Wal-Mart lease expired on September 3, 2010, and has not been renewed. Mr. Prisco also contends that he is currently running a logistics business at the Property that offers storage space, warehousing services, and pick-pack-ship services.

On June 24, 2009, TD Bank's counsel sent a letter to the Debtor advising that TD Bank was exercising its rights under the Absolute Assignments. In November 2009, TD Bank's counsel sent a letter to Beverage Works, the only tenant it was aware of, advising that TD Bank was exercising its rights under the Absolute Assignments, and directing Beverage Works to pay its rents directly to TD Bank.

The Debtor entered into a lease with Wal-Mart/Toms River dated March 9, 2010. The term of the Wal-Mart lease was three months and the Lease required the entire rent, totaling $49,295.32, to be paid within five days of the commencement of the lease term. The Debtor opened a new account at OceanFirst Bank and deposited the Wal-Mart rent money into that account on March 16, 2009. On March 19, 2010, the Debtor wrote a check out of the OceanFirst account to Matrix in the amount of $3,403. In the next month, the Debtor withdrew an additional $33,182.82 from this account.

On April 19, 2010, the Debtor filed a voluntary Chapter 11 petition. The sheriff sale had been scheduled for the next day. On June 17, 2010, the Debtor filed a complaint in the Bankruptcy

Case 10-21719-KCF    Doc 69    Filed 11/01/10    Entered 11/01/10 15:37:43    Desc Main
                         Document      Page 5 of 12

Court for declaratory relief seeking a determination that the rents generated from both pre and post-petition leases are property of the estate, as well as a determination that the revenues generated from the Debtor's logistics business are not subject to the assignment of rents.

Conclusions of Law

Section 1112(b) was amended as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Section 1112(b)(1) now provides:

> Except as provided in paragraph (2) of this subsection, subsection © of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

11 U.S.C. § 1112(b). The amendment was intended to make it more difficult to defeat a request for conversion or dismissal. Hon. William H. Brown & Lawrence R. Ahern III, 2005 BANKRUPTCY REFORM LEGISLATION WITH ANALYSIS at 89 (2005). The previous version of § 1112(b) provided that the court "may" dismiss or convert a case for cause; post-BAPCPA a court "shall" dismiss or convert a case upon a showing of cause. *See*, In re Products Intern. Co., 395 B.R. 101, 108 (Bankr. D. Ariz. 2008) ("Section 1112(b), as amended, provides that once cause has been shown, the Court's discretion is limited"); In re The SCO Group, Inc., 2009 WL 2425755 (Bankr. D. Del. 2009) ("Congress clearly intended to make conversion or dismissal mandatory upon proof of 'cause.'").

The 2005 amendment expanded the enumerated grounds for conversion or dismissal of a chapter 11 case to sixteen. The statutory list of causes is not exhaustive. In re Miell, 419 B.R. 357 (Bankr. N.D. Iowa 2009). Although not enumerated in § 1112(b), the Third Circuit Court of

Appeals has found that lack of good faith remains a valid ground for dismissal of a Chapter 11 case. In re 15375 Memorial Corp. v. Bepco, L.P., 589 F.3d 605, 618 (3d Cir. 2009).

TD Bank argues that there is cause to convert the Debtor's case based on the following: 1) Mr. Prisco's disabling conflicts of interest, resulting in the Debtor's failure to investigate and prosecute lawsuits against (I) Matrix for rent, and as successor-in-interest to GI, and (ii) against CIT; 2) Mr. Prisco's self-dealing, including allowing Matrix to occupy the Property rent-free; 3) the Debtor's failure to segregate, and unauthorized use of, cash collateral in violation of the Bankruptcy Code; 4) Mr. Prisco's gross mismanagement of the Debtor, including the failure to file tax returns and poor recordkeeping leading to the Debtor's inability to locate even basic documents requested by TD Bank; 5) the Debtor's pre-petition conversion of rents absolutely assigned to TD Bank; and 6) the Debtor's lack of any equity in the Property, and Mr. Prisco's lack of any economic interest in his membership interest the Debtor.

The Court will first address the contention that the principal of the Debtor is self-dealing by allowing Matrix to occupy the Property rent-free. Anthony Prisco is the CEO of Matrix and his wife is the owner. Mr. Prisco responds that he has the right to make a business decision not to charge a tenant rent and the amount of rent Matrix would have paid pre-petition was insignificant because it would have only amounted to around $10,000. That position misapprehends the Debtor's fiduciary duties both pre and post-petition. Under New Jersey law, the officers and directors of an insolvent corporation owe a fiduciary duty to creditors. *See*, AYR Composition, Inc. v. Rosenberg, 261 N.J. Super. 495, 505 (App. Div. 1993). As one court described the obligation, "[w]hen a corporation becomes insolvent a quasi-trust relationship arises between its officers and directors on the one hand and its creditors on the other." Portage Insulated Pipe Co. v. Costanzo, 114 N.J. Super.

6

164, 166 (App. Div. 1971); *see also*, Matter of Stevens, 476 F. Supp. 147, 153 n. 5 (D.N.J. 1979) (In this quasi-trust relationship, officers "cannot prefer one creditor over another, and they have a 'special duty not to prefer themselves'"). The Debtor is correct that if Prisco were meeting all of its obligations pre-petition then it would have the right to decide not to charge rent to Matrix or GI's former in-house counsel. Once it was not meeting its obligations, however, Prisco was obligated to run its business for the benefit of its creditors. Deciding to waive rent, no matter how seemingly insignificant, is not acceptable. The same holds true post-petition; a debtor-in-possession is "bound by all of the fiduciary duties of a bankruptcy trustee." In re Insilco Tech., Inc., 480 F.3d 212, 215 n. 3 (3d Cir. 2007). "The debtor in possession is not free to deal with estate property as he chooses, but holds it in trust for the benefit of creditors, standing in the shoes of a trustee 'in every way.'" In re Jehan-Das, Inc., 91 B.R. 542, 546 (Bankr. W.D. Mo. 1988). As a debtor-in-possession the Debtor continues to allow Matrix to occupy the Property rent-free. The Debtor's behavior both pre and post petition is inconsistent with its fiduciary obligations.

Next, TD Bank argues that the Debtor has disabling conflicts of interest with regard to Matrix, GI, and CIT. Conflicts of interest involving the principal decision maker in the bankruptcy case formed part of the basis for dismissal of a Chapter 11 case in In re 15375 Memorial Corp. v. Bepco, L.P., 589 F.3d 605 (3d Cir. 2009). In that case, the Third Circuit found that the principal's "mixed allegiances prevented him from adequately protecting the Debtors' interests." Id. at 624. The same is true in this case. Anthony Prisco's mixed allegiances with regard to Matrix, GI, and CIT make it impossible for him to assess the value of pursuing litigation against those entities objectively.

Next, TD Bank argues that the Debtor's conversion of rents pre-petition warrants conversion. After TD Bank exercised its rights under the Absolute Assignments, the Debtor opened an account at OceanFirst Bank and deposited all of the rent from the Wal-Mart/Toms River lease into that account. The Debtor then proceeded to spend the entire amount without TD Bank's knowledge, including over $33,000 of what the Debtor dubs "petty cash". By way of explanation the Debtor states that "[a]fter TD froze the Debtor's bank account, based on the Debtor's belief that the storage fees, including Walmart payments, were not TD's property under the Assignment, the Debtor opened an account at another financial institution." *Debtor's Memorandum of Law* at 23. That response is problematic for several reasons. First and foremost is that the Debtor's opinion that the Wal-Mart payments were not TD Bank's property under the Assignment is inconsistent with the plain language of the Wal-Mart lease itself. All of the terminology in the lease and the provisions in the lease indicate that it is an ordinary lease of warehouse space and not a contract for use of the Debtor's logistics business. Despite that, the Debtor concluded that based on an unsupported theory that its logistics business was somehow distinct from its rental of warehouse space. Based on that tortured reading, the Debtor then decided that it did not have to honor its commitments under the Absolute Assignment of rents or its promise to TD Bank that it would use a TD Bank account to operate its business.

The same cavalier attitude toward its pre-petition obligations to TD Bank can be seen in the Debtor's post-petition actions. After the filing of the bankruptcy case, the Debtor instructed its pre-petition tenant, the Beverage Works, Inc., to stop paying its rent to TD Bank and pay it to the Debtor. The Debtor justified this action based on another novel legal theory: that the debtor-in-possession is not bound by a pre-petition assignment of rents. Debtor ultimately turned over all but

$2,000 of the Beverage Works rent to TD Bank. The Debtor shrugged off its unauthorized use of the $2,000 as meaningless because the funds were for expenses related to the Property. The Debtor seems unable to understand that the assignment of rents removed its discretion to make these types of decisions.

The Debtor's position would be less objectionable if the money at issue were being held in trust for TD Bank, but apparently that is not the case. The Debtor's opposition states: "post-petition rents received from the Debtor's office tenants have been set aside in a separate bank account pending the Court's determination of the Adversary Proceeding between the Debtor and TD." *Debtor's Memorandum of Law* at 20. That statement is at odds with the uncontested fact that the Debtor also took it upon itself to collect the rent from the Wal-Mart/Manahawkin lease and deposit those funds into its DIP account. The Wal-Mart/Manahawkin lease defines the amount due as "rent", but the money was not segregated pending the determination of the adversary proceeding. In a supplemental certification dated October 11, 2010, counsel for TD Bank certified that the Debtor had entered into a post-petition lease with Orso, LLC. TD Bank made a demand for turnover of the rents and the Debtor informed TD that the rent money is "being held in reserve by the Debtor." Yet the August 2010 operating report shows that $11,002 collected from Orso was not segregated - it was deposited into the Debtor's sole operating account at Investor's Savings Bank. Even entering into the lease was at odds with Mr. Prisco's statement at his Rule 2004 deposition that he would seek court approval for any post-petition leases. This pattern of behavior is not consistent with a DIP's fiduciary obligations. While many of the problems cited in this opinion standing alone might appear *de minimus*, the confluence paints a picture of a Debtor that is incapable of taking its fiduciary responsibilities seriously. That is cause for conversion or dismissal. Therefore, the Court

9

does not even need to address the additional causes for conversion argued by TD Bank.

Finally, although not one of the causes relied upon by TD Bank, the Court notes that conversion would also be mandated based on "the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). The Debtor's response to this motion is replete with references to the fact that this case should not be converted because *all* creditors will benefit from a reorganization. It is not uniformly accepted "that creditors will invariably benefit more fully from an attempted reorganization." In re Stanmock, Inc., 103 B.R. 228, 233 (9th Cir. BAP 1989). TD Bank is the major creditor in this case and it is difficult to argue that it will benefit more from an attempted reorganization. If successful, the reorganization that is proposed in this case might benefit other creditors, but the plan places all of the risk of failure on TD Bank.

The plan proposes to pay interest only to TD Bank for the first year, principal and interest for the next four years, and then a balloon payment for the balance. Courts have found cause to dismiss a Chapter 11 case when the debtor relies on vague assertions that a future refinance is possible. *See, e.g.,* In re DCNC North Carolina I, LLC, 407 B.R. 651 (Bankr. E.D. Pa. 2009). A refinance in 60 months is frequently proposed in Chapter 13 cases, and just as frequently the cases are not confirmed based on lack of feasibility. The result should be no different in a Chapter 11 case. It has long been recognized that "[v]isionary schemes are not sufficient to make a plan feasible." In re Sovereign Oil Co., 128 B.R. 585, 587 (Bankr. M.D. Fla. 1991).

The success of the plan is also contingent on the Debtor being successful on several aggressive legal theories. The Debtor filed a three count complaint seeking declaratory relief. Count I seeks a declaratory judgment that the rents arising from the pre-petition lease with Beverage Works constitute property of the estate pursuant to § 541(a)(6). Count II seeks a declaratory

judgment that any rents arising from post-petition leases entered into by the Debtor constitute property of the estate pursuant to § 541(a)(6) and (7). Count III seeks a declaratory judgment that the service fees do not fall within TD Bank's assignment of rents. For the Debtor to succeed on Count I, this Court would have to ignore binding Third Circuit precedent. *See*, In re Jason Realty, L.P., 59 F.3d 423 (3d Cir. 1995). Nonetheless, the Debtor urges this Court to find that Jason Realty was wrongly decided. At oral argument, Debtor's counsel made a compelling argument about the need to give debtors a weapon in their arsenal to deal with their secured creditors in the post-Jason Realty environment. The Court is sympathetic to that argument, but it is simply unable to ignore the ruling of a higher court. Even if this Court were somehow able to craft a ruling that allowed the case to confirm subject to an appeal to the Third Circuit[2], that is not the only hurdle to a finding of feasibility. Even accepting the Debtor's back-up plan of "recasting" its obligation to TD Bank, that only takes care of payments to TD Bank, it does not leave the Debtor with any other source of income. To have any operating capital to fund a plan or run its business the Debtor would also have to succeed on one or both of the other counts in the complaint. Even assisted by the Debtor's highly capable bankruptcy counsel, success is far from assured. "Although success does not have to be guaranteed, the Court is obligated to scrutinize a plan carefully to determine whether it offers a reasonable prospect of success and is workable." In re Yates Development, 258 B.R. 36, 44 (Bankr. M.D. Fla. 2000). The Court cannot find that this plan offers a reasonable prospect of success.

For all of the foregoing reasons, the Court finds that cause for conversion or dismissal has been established under § 1112(b). This section requires the Court to find which form of relief,

---

[2]An appeal to the Third Circuit is a costly proposition and the Debtor's financial projections do not support a finding that the Debtor could fund that litigation and make plan payments.

conversion or dismissal, is in the best interest of the estate. Because the motion sought only conversion, neither party has addressed this issue. The Court will accept further submissions, to be filed no later than November 22, 2010 that addresses the limited issue of whether conversion or dismissal is in the best interest of the estate.

                                              */s/ Kathryn C. Ferguson*
                                              KATHRYN C. FERGUSON
                                              US Bankruptcy Judge

Dated: November 1, 2010